IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUBY HELVY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALLEGHENY COUNTY and<br>ALLEGHENY COUNTY DEPARTMENT<br>OF EMERGENCY SERVICES,<br><br>　　　　Defendants. | 2:14-cv-01686-TFM |

**MEMORANDUM OPINION**

Pending before the Court is DEFENDANTS' MOTION TO DISMISS (ECF No. 8) filed by Allegheny County and Allegheny County Department of Emergency Services[1] ("Defendant"), along with a BRIEF IN SUPPORT (ECF No. 11). Ruby Helvy ("Plaintiff") has filed a BRIEF IN OPPOSITION TO DEFENDANTS' MOTION (ECF No. 12). Accordingly, the motion is ripe for disposition. For the following reasons, the Court will grant the motion in part, and deny it in part.

**I.　　Background**

Plaintiff, an African-American woman, was employed by Defendant as a 9-1-1 dispatcher from 2005 until 2014, taking 9-1-1 calls and relaying them to emergency workers in the field. On December 5, 2012, Plaintiff's supervisors, Rebecca Frazier and Stephanie Ware, suspended Plaintiff for one day without pay, allegedly because she was not at her desk during a call. Late the next month, on January 26, 2013, Plaintiff was suspended for three days without pay,

---

1.　　The Allegheny County Department of Emergency Services is a subunit of the County, not an independent legal entity. Thus, the Department is not subject to suit in its own right, and the County, itself, is the proper Defendant in this action. *See Neil v. Allegheny Cnty.*, No. CIV.A. 12-0348, 2012 WL 3779182, at *1 (W.D. Pa. Aug. 31, 2012) (citations omitted). ("In a section 1983 action, police departments and other departments of a municipality are not separate legal entities from the municipality and cannot, therefore, be sued separately."). The Department will, therefore, be dismissed from this action.

1

allegedly because she asked officers to repeat themselves too many times during calls.

On February 15, 2013, Plaintiff submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"), alleging that she was suspended because of her race.[2] Two days later, Plaintiff was suspended for two days without pay for her "general attitude, neglect of duty and politeness." The next month, Plaintiff was suspended from March 11-17, 2013, without pay, for displaying insufficient effort and inattention to detail. On May 16, 2013, Plaintiff filed a formal EEOC charge, which referenced all of the allegedly discriminatory conduct occurring from December 2012 to May 2013.

Plaintiff was again suspended in November 2013. Around that same time, Defendant suspended a white, female co-worker; however, unlike Plaintiff, the white, female co-worker was suspended for a shorter period of time than Plaintiff and was given "split time." On December 5, 2013, Plaintiff filed a supplement to her EEOC charge, reflecting the new instance of alleged discrimination.

On March 23, 2014, Ware reprimanded Plaintiff for cancelling a call, allegedly while others who engaged in similar conduct were not so reprimanded. On April 3, 2014, Plaintiff again supplemented her EEOC charge to include this allegedly discriminatory act.

Plaintiff was issued a right-to-sue letter on September 8, 2014. On October 24, 2014, she

---

2. In her complaint, Plaintiff alleges that she "filed her initial, formal charge with the [EEOC]" on February 15, 2013, and she refers to Exhibit 1 as the "formal charge." Am. Compl. P. 20. Exhibit 1 is not, however, an EEOC charge form; it is an intake questionnaire. These are distinct forms that "serve different purposes." *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010). "An Intake Questionnaire facilitates 'pre-charge filing counseling' and allows the Commission to determine whether it has jurisdiction to pursue a charge." *Id.* (quoting *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008)). It "is not shared with the employer during the pendency of the EEOC investigation." *Id.* In contrast, a formal charge delineates the scope of the EEOC's investigation and notifies the defendant of the charges filed against it. *Id.* (citations omitted). It appears as though Plaintiff's formal charge was not filed until May 16, 2013. *See* Ex. 2. Thus, this charge, as supplemented in December 2013 and April 2014, defined the scope of the EEOC investigation and, in turn, the scope of this lawsuit.

2

was suspended without pay indefinitely, pending a termination hearing, allegedly as a result of a neglect of duty.

Plaintiff filed suit in the Allegheny County Court of Common Pleas on November 19, 2014. Defendant then timely removed the action to this Court. On December 22, 2014, Defendant filed a motion to dismiss. Plaintiff responded by filing an amended complaint, alleging claims for disparate treatment, hostile work environment, and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* ("PHRA"). This motion then followed.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007), the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that only a complaint that states a plausible claim for relief survives a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

A district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. First, the Court must separate the factual and legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has

to 'show' such an entitlement with its facts." *Id.* at 211 (citing *Iqbal*, 556 U.S. at 679). Determining "plausibility" is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. Discussion

Defendant seeks to dismiss three aspects of Plaintiff's amended complaint. First, Defendant argues that all claims arising out of Plaintiff's October 24, 2014, suspension pending termination should be dismissed because Plaintiff failed to exhaust her administrative remedies with respect to that action. Second, Defendant argues that Plaintiff's reprimand on March 23, 2014, does not rise to the level of an "adverse employment action" and consequently all claims related to that incident should be dismissed. Third, Defendant argues that Plaintiff cannot recover punitive damages under either Title VII or the PHRA. These issues will be addressed *seriatim*.

### A. October 24, 2014, Suspension

Defendant first contends that Plaintiff failed to exhaust her administrative remedies as to her October 24, 2014, suspension pending termination. Plaintiff counters that she was not required to file another charge with the EEOC for this claim because it was within the scope of her prior complaints.

A plaintiff must exhaust her administrative remedies before filing a Title VII suit in federal court. *Spence v. Straw*, 54 F.3d 196, 200 (3d Cir. 1995). The exhaustion requirement may not be applicable, however, where a plaintiff has already filed an EEOC charge and the subsequent acts "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). Accordingly, the Court must "examine carefully the prior pending EEOC complaint[s] and the unexhausted claim . . . before determining that [another EEOC] complaint need not have been filed." *Robinson v.*

*Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997).

Plaintiff filed her formal charge of discrimination on May 16, 2013. In the charge form, she specifically referenced the December 2012 and January, February, and March 2013 suspensions and claimed that Defendant's actions amounted to racial discrimination and retaliation and also created a hostile work environment. On December 4, 2013, Plaintiff supplemented her EEOC charge to include the November 2013 suspension, again alleging discrimination and retaliation. On April 3, 2014, Plaintiff filed an additional supplement, which described the March 2014 reprimand and, as with the other incidents, alleged that it was discriminatory and retaliatory.

The Court concludes that Plaintiff's claim related to her October 24, 2014, suspension is fairly encompassed within the scope of her prior EEOC charges. Plaintiff alleges that her suspension and eventual termination "was the product of th[e] same [discriminatory and] retaliatory intent" that animated Defendant's earlier actions. *See Waiters*, 729 F.3d at 238. This incident was, in essence, a continuation of the prior discrimination and retaliation. Thus, Plaintiff was not required to file an additional charge with the EEOC as to this incident.

### 2. March 23, 2014, Reprimand

Defendant next argues that any claims related to Ware's reprimand of Plaintiff in March 2014 should be dismissed because Ware's conduct did not amount to an adverse employment action. In order for a reprimand to be individually actionable under Title VII, it must have affected the terms and conditions of the plaintiff's employment. *See Weston v. Pennsylvania*, 251 F.3d 420, 430–31 (3d Cir.2001), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, (2006). As the Court of Appeals has explained, "[f]ormal reprimands that result in a notation in an employee's personnel file could be sufficiently

concrete" to amount to an adverse employment action, "but harsh words that lack real consequences are not." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1298 (3d Cir. 1997), *overruled in part on other grounds by Burlington*, 548 U.S. at 53).

The amended complaint contains just one paragraph regarding this incident. Namely, Plaintiff alleges, "Ware reprimanded [her] for cancelling a call." Am. Compl. ¶ 33. She says nothing, however, about whether this reprimand had an effect on her employment status or the terms and conditions of her employment. She does not even describe what form the reprimand took. Thus, the Court agrees with Defendant that this incident is not individually actionable, and Defendant's motion is granted to the extent Plaintiff seeks to base her disparate treatment claim on this incident.

Although Plaintiff seems to concede that this incident is not individually actionable, she suggests that it can still be considered as part of her hostile work environment claim.[3] It is true, as Plaintiff argues, that hostile work environment claims can be "based on the cumulative effect of individual acts," which, on their own, may not be actionable under Title VII. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). The trouble with Plaintiff's argument, however, is that she cannot simply "cobbl[e] together a number of distinct, disparate acts" – the same acts that make up her disparate treatment claim – and label it "a hostile work environment." *Brantley v. Kempthorne*,

---

3.  In her brief, Plaintiff spends almost an entire page discussing the continuing violation doctrine, but the Court fails to see how that doctrine is implicated in this case. The continuing violation doctrine allows a plaintiff to base a hostile work environment claim, in part, on non-discrete acts of discrimination that fall outside the of the limitations period so long "'as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)). But in this case, all of the allegedly discriminatory acts occurred well within the limitations period, so Plaintiff has no need to attempt to revive otherwise stale allegations by alleging that they were part of a continuing violation.

No. CIV.A. 06-1137ESH, 2008 WL 2073913, at *8 (D.D.C. May 13, 2008). So, "[f]or example, if an employee is discriminatorily denied ten promotions over a period of time, that pattern of conduct may give rise to ten separate disparate treatment claims under Title VII, but it would not create a hostile work environment claim . . . ." *Id.* Something more is required to adequately state a hostile work environment claim: allegations of a pervasive pattern of behavior that makes going to work virtually unbearable. Otherwise, "the distinctions between both the elements that underpin" disparate treatment claims and hostile work environment claims "and the kinds of harm each cause of action was designed to address" would be significantly blurred. *Parker v. State Dep't of Pub. Safety,* 11 F. Supp. 2d 467, 475 (D. Del. 1998).

Plaintiff ignores this principle. As she acknowledges in her brief in response to Defendant's motion, her hostile work environment claim, though separately pled, is premised on the very same factual allegations underlying her disparate treatment claims. *See* Pl.'s Br. at 7, ECF No. 11 (referring to the four suspensions and arguing that "these acts formed the basis of a hostile environment complaint"). She has not alleged any additional facts. Thus, the Court is quite skeptical of whether Plaintiff has pleaded enough to proceed to discovery. Fortunately for Plaintiff, Defendant has not moved to dismiss her hostile work environment claim on this, or any other, basis, so the Court is constrained to allow this claim to survive – at least at this stage. But a word of caution is in order: summary judgment will be granted in favor of Defendant on this claim unless Plaintiff can come forward with evidence of "severe or pervasive conduct" that altered the terms and conditions of her employment. *Mandel*, 706 F.3d at 167. She will not be "permitted to 'bootstrap' her alleged discrete acts of discrimination and retaliation into a broader hostile work environment claim." *Brantley*, 2008 WL 2073913, at *8.

### C. Punitive Damages

Finally, Defendant moves to dismiss Plaintiff's claim for punitive damages. The Court agrees that dismissal is warranted. It is clear that "[p]unitive damages are not available under Title VII" where, as here, "the defendant is a 'government,' a 'government agency,' or a 'political subdivision." *Phillips v. Donahoe*, No. CIV.A. 12-410, 2013 WL 5963121, at *23 n.37 (W.D. Pa. Nov. 7, 2013) (quoting 42 U.S.C. § 1981a(b)(1)). Likewise, as Defendant correctly observes, punitive damages are also not available under the PHRA. *See Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 749 (Pa. 1998)). Accordingly, no matter what Plaintiff uncovers in discovery, she will not, as a matter of law, be able to recover punitive damages, and this aspect of Defendant's motion is granted.

### IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part, and denied in part. An appropriate order follows.

McVerry, S.J.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUBY HELVY, | ) ) ) | |
| Plaintiff, | ) ) | 2:14-cv-01686-TFM |
| v. | ) ) | |
| ALLEGHENY COUNTY and ALLEGHENY COUNTY DEPARTMENT OF EMERGENCY SERVICES, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

**AND NOW**, this 17th day of February, 2015, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that DEFENDANTS' MOTION TO DISMISS (ECF No. 8) is **GRANTED IN PART**, and **DENIED IN PART**. The motion is **DENIED** insofar as it seeks to dismiss any claims based on Plaintiff's October 24, 2014, suspension; **GRANTED** insofar as the March 23, 2014, reprimand is not individually actionable; and **GRANTED** insofar as it seeks to dismiss Plaintiff's request for punitive damages.

It is **FURTHER ORDERED** that the Allegheny County Department of Emergency Services is **DISMISSED** as a Defendant, and the caption of this action is amended is hereby **AMENDED** as follows:

| | ) |
|---|---|
| RUBY HELVY, | ) |
| | ) |
| Plaintiff, | ) 2:14-cv-01686-TFM |
| | ) |
| v. | ) |
| | ) |
| ALLEGHENY COUNTY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Defendant shall file an answer to Plaintiff's amended complaint **on or before March 3, 2015**. The parties shall confer as necessary and shall file with the Court the Stipulation Selecting ADR Process and the Rule 26(f) Report **on or before March 10, 2015**. The Initial Case Management Conference is hereby **SCHEDULED** on **March 17, 2015, at 8:30 a.m.** in Courtroom 6C.

BY THE COURT:

s/Terrence F. McVerry
Senior United States District Judge

cc: **Joseph Pometto, Esq.**
Email: j@lawkm.com

**Virginia Spencer Scott, Esq.**
Email: virginia.scott@alleghenycounty.us

(via CM/ECF)